946 F.2d 894
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Lydia L. DAVIS, Plaintiff-Appellant,
v.
Ruth T. YOUNG, Defendant-Appellee.
 No. 90-6429.
 United States Court of Appeals, Sixth Circuit.
 Oct. 17, 1991.
 
 Before KENNEDY and DAVID A. NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Plaintiff Lydia L. Davis appeals the judgment against her in this medical malpractice diversity action. She alleges as reversible error the trial court's application of the Tennessee statute governing the competency of witnesses in medical malpractice cases. Specifically, she claims the court read the statute too restrictively in excluding the testimony of out-of-state doctors as to legal causation, in not granting a waiver of the statute's restrictions, and in charging the jury as it did based on the alleged errors in applying the statute. For the reasons set out below, we find no reversible error, and AFFIRM the District Court's judgment.
 
 I.
 
 2
 Defendant Ruth T. Young, an oncologist in Kingsport, Tennessee, treated the plaintiff over several years for cancer. In early July 1988, Young changed the patient's treatment program to incorporate an altered drug therapy plan. Shortly thereafter Davis suffered a stroke. This suit was later initiated, alleging malpractice in the decision to administer the new drug therapy, and in the follow-up care attendant upon the execution of the new program.
 
 
 3
 During the course of the trial below, the court attempted with great difficulty to apply the law of Tennessee, as it was bound to do in this diversity case.[1] Specifically, the court wrestled with the Tennessee statute relating to the competence of expert witnesses in medical malpractice cases. Tenn.Code Ann. § 29-26-115(b) provides as follows:
 
 
 4
 No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a) unless he was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make his expert testimony relevant to the issues in the case and had practiced this profession or specialty in one of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection when it determines that the appropriate witnesses otherwise would not be available.
 
 
 5
 Subsection (a) provides that in a medical malpractice action, the claimant has the burden of proving by evidence as provided by subsection (b) the three common law elements of negligence, namely the standard of care owed the patient, the breach of that duty, and that the breach was a proximate cause of plaintiff's injury. At the time the court below was applying this statute, the most recent Tennessee court to construe the statute was the Tennessee Court of Appeals in an unreported case, Payne v. Caldwell, No. 88-345 II, 1989 WL 92197, 1989 Tenn.App.Lexis 547 (Ct.App. Aug. 16, 1989) ("Payne I").
 
 
 6
 The court below read the Payne I case as providing that geographically ineligible witnesses could not testify as to the prima facie elements, but should be allowed to testify as to the issue of "medical causation." Both the Payne I court and the court below failed to articulate the exact contours of "medical causation," and how it differs from legal causation. Applying its understanding of the Payne I rule, however, the court below excluded the testimony of plaintiff's Michigan doctors only insofar as it related to the standard of care prevailing in Kingsport, Tennessee, and to the legal, proximate causal relationship between the defendant's acts and the plaintiff's injuries. The court thus attempted to allow the doctors to testify to the "medical causation" element, but not to the legal causation. The court further charged the jury that it could consider their testimony in evaluating the medical causation, but not in determining the standard of care or the legal causation. The jury returned a verdict for the defendant.
 
 II.
 
 7
 Davis raises three issues on appeal. First, she alleges error, under the law of Tennessee, in limiting the testimony of the Michigan doctors as to the medical causation, but not allowing it as to the proximate or legal causation. Second, she alleges error in the jury instructions, which were consistent with this semantic distinction between medical and legal/proximate cause, allowing the competence of the Michigan doctors as to the former but not the latter. Third, she alleges error in the trial court's failure to fully waive the geographic requirements as to the Michigan doctors' competence.
 
 
 8
 We have considerable difficulty in grasping the distinction, as applied by the court below, between "medical causation" and the legal and proximate causation elements of the cause of action. The statute appears on its face to exclude testimony of non-qualifying experts as to the three elements. As to other issues of relevance, such as damages, non-qualifying testimony is not barred as incompetent by the statute. Nowhere in the plain language of the statute do we find any distinction between different forms of causation.
 
 
 9
 We have the benefit of the Supreme Court of Tennessee's clarification of the statute's restrictions in its decision in Payne v. Caldwell, 796 S.W.2d 142 (Tenn.1990) ("Payne II"), handed down after the trial in this case. It squarely held that testimony as to each of the elements of medical malpractice--the standard of care, the breach of the standard, and proximate cause connecting the breach and the injury suffered--must be established by testimony from local (in state or contiguous state) doctors absent a waiver from the court due to the unavailability of such witnesses. Id. at 143; ("the element of proximate cause is included [in the coverage of the statute] and witnesses, to be competent to testify on the issue, must meet the licensing and geographic requirements of section (b)").
 
 
 10
 Under the law of Tennessee, therefore, the testimony of the Michigan doctors relating to the standard of care, and to the causes of the alleged injury suffered, were barred as incompetent by the statute. Any distinction between medical causation versus legal causation is inapposite. As noted by the Payne II court, the "proof of each element in a medical malpractice action is so entwined that it is difficult, if not impossible, for a witness to testify on the issue of causation without commenting, either expressly or tacitly, on the standard of care or whether or not it was breached." Payne, 796 S.W.2d at 143. In allowing the testimony of the non-qualifying doctors as to medical causation, the court below erred in plaintiff's favor. Were we to reverse, their testimony would simply be more limited. We therefore decline to hold the limited admission of their testimony to be reversible error.
 
 
 11
 The issue as to the jury instructions is slightly more troubling. Again, to the extent any error was made, it worked in favor of plaintiff. We are concerned about the possibility of confusion on the jury as to the proper standards to evaluate and incorporate the testimony of the Michigan doctors. However, it seems that any confusion as to the medical causation versus legal causation distinctions would simply have undermined the testimony of the doctors. Inasmuch as their testimony would be properly admitted only as to issues subsequent to the prima facie elements, i.e., they are only eligible to testify to the extent of injury suffered as a consequence of the alleged wrongful acts or omissions, we decline to hold it reversible error where the jury did not hold defendant liable for any consequences. Had plaintiff recovered some but not all damages sought, we would find the potential jury confusion more troublesome, but any error simply negated the improperly admitted testimony or related to issues outside of fundamental liability.
 
 
 12
 Finally, plaintiff belatedly claims error in the failure of the court to waive the geographic eligibility limitations to allow unrestricted testimony from the Michigan doctors. First, we note the court below did not grant any waiver as to the Michigan doctors, but rather simply allowed them to testify to the extent it thought not barred by the statute. Any questions of partial versus complete waiver are thus irrelevant.
 
 
 13
 Indeed, plaintiff failed to even seek a waiver in the court below. On the record before us, we have no evidence of plaintiff being denied a waiver. We would review such a denial under an abuse of discretion standard in any case, but we have no such decision to review.
 
 
 14
 Were we to conduct such a review, it seems unlikely that plaintiff could prevail. Plaintiff produced at least two local doctors to testify to the causation element of her case. We fail to see any unavailability of appropriate witnesses. See Ralph v. Nagy, 749 F.Supp. 169 (M.D.Tenn.1990). The statute does not call for waiver when a party's preferred witnesses are not geographically qualified, but rather when no appropriate witnesses are qualified. Contrary to plaintiff's analysis, appropriate does not simply mean desired, and treating physicians are not so inherently appropriate as to merit waiver. Plaintiff's arguments seem to be an attempt to make an end run around the restrictions of the statute. See Nagy, 749 F.Supp. at 174 ("This Court rejects plaintiff's argument that Dr. Cooke's alleged 'treating' status puts him outside the ambit of the 'contiguous state rule' ... [as] an end run around the ... rule as it applies to experts.").
 
 
 15
 Plaintiff's reliance on Childress v. Bennett, No. 01-S-01-9001 (Tenn. Aug. 5, 1991), is unpersuasive. As expressly noted by the Childress court, that was an "exceptional case," involving a Tennessee doctor who happened to be out of the state for specialized training only for the time period the exclusionary statute was applicable. The court noted that admitting the testimony of the doctor in no way violated the spirit of the statute, and since the plaintiff had no other qualifying witnesses, waiver of the statute was appropriate to allow the case to be decided on the merits. This case involves no such exigencies, as plaintiff had two qualifying witnesses testify when her suit did proceed to trial. The waiver as to plaintiff's witnesses is not only not consistent with the spirit of the statute, it flies in the face of the language and purpose of the statute. While we sympathize with plaintiff's plight, Childress does not dictate a different result.
 
 
 16
 For the foregoing reasons, the decision of the District Court is AFFIRMED.
 
 
 
 [1]
 Federal Rule of Evidence 601 provides as follows:
 Every person is competent to be a witness except as otherwise provided in these rules. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness shall be determined in accordance with State law.
 The court below properly looked to the Tennessee statute governing the competence of witnesses in medical malpractice actions under Tennessee law. See Ralph v. Nagy, 749 F.Supp. 169 (M.D.Tenn.1990).